## Callahan v. State Automobile Mutual Insurance Company of Columbus, Ohio

*Geisenberger, Zimmerman, Pfannebecker & Atlee,* for petitioners.

*Meyer, Darragh, Buckler, Rebenek & Eck* and *Barley, Snyder, Cooper & Barber,* for respondents.

MUELLER, *J.*, January 5, 1981—Petitioner, Barbara Jo Callahan, sustained severe injuries on October 28, 1978 when struck by an automobile operated by Pedro Cartagena. The accident occurred on South Duke Street in the City of Lancaster when she was walking to her automobile which was parked across the street from the point where she was struck on the sidewalk. Mrs. Callahan, a resident of Ohio, was insured under a policy of automobile liability insurance issued in Ohio by the State Automobile Mutual Insurance Company of Columbus, Ohio (hereafter State Auto). Mr. Cartagena, a Pennsylvania resident, was insured under a policy issued by The Home Insurance Companies (hereafter Home).

Mrs. Callahan presented claims for payment for medical expenses pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, art. I, sec. 101 et seq., 40 P.S. § 1009.101 et seq., to both State Auto and Home. Petitioners' policy with State Auto included an amendatory endorsement identified as an "out-of-state insurance endorsement" which provided in pertinent part as follows:

"It is agreed that, subject to all the provisions of the policy except where modified herein, the following provision is added:

"If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage af-

forded by the policy shall be as set forth in such law in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and *only with respect to the operation or use of a motor vehicle in such state or province;* provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss."

Both State Auto and Home declined payment, each contending that the other company was the applicable source of no-fault benefits. State Auto's denial was initially premised upon the belief that the out-of-state insurance endorsement did not obligate State Auto to provide no-fault coverage and further that, under the terms of the endorsement, out-of-state coverage was provided "only with respect to the operation or use of a motor vehicle in such state. . . ."

Petitioners instituted this declaratory judgment action against both insurers seeking a declaration by this court as to which insurer must pay no-fault benefits under the applicable insurance coverage and the benefits to which they are entitled. The amended prayer of the petition of the petitioners requested a specification of the amounts to which the Callahans are entitled under the applicable policy. After the petition was filed, State Auto determined that its "out-of-state insurance endorsement" was intended to provide no-fault benefits where required. State Auto and Home then made an agreement to jointly share in the payment of the outstanding medical expenses, and those expenses were paid.

It is conceded by all parties that Ohio, the state of the Callahans' residence, has not enacted a no-fault statute. This action continues with respect to petitioners' claim for work loss benefits, replacement service loss, interest and counsel fees. At no time prior to the filing of the declaratory judgment action did petitioners submit to either insurer an application for either work loss benefits or replacement services loss, nor did petitioners provide either insurer with information which supported the existence of such claims or which would have permitted either company to calculate the amount of such benefits. State Auto and Home agreed at the hearing held November 28, 1980 that the court need not determine which company is to make payment if the court concludes that the Callahans are entitled to additional benefits.

The evidence at the hearing established that Mrs. Callahan was not employed at the time of the accident and had not been employed since 1970. She testified that at the time of the accident she had two applications for employment pending in the Columbus, Ohio, area. One application made in 1977 was with the United States Postal Service, and the other job application was with General Motors Corporation. At some time during the month of September or early October, 1978, she had been interviewed and had a physical examination at General Motors Corporation. As of October 28, 1978 she was intending to go to work at the General Motors Corporation plant, but she had not been accepted for employment by either prospective employer at the time of the accident. She had notified the U.S. Postal Service on October 16, 1978 that she would be available after December 1978, but she still had to meet pre-employment training and testing qualifications. Following the accident she has not been

contacted by either prospective employer. Mrs. Callahan also testified that she did not feel that she was capable of working even now since she is not able to either stand or sit for any length of time due to residual problems from her severe injuries. She stated that she had not asked her doctor when she could go to work.

The evidence disclosed that from November 1, 1978 through March 30, 1979 petitioners used a day care center for their youngest daughter who was two years old. The claim for replacement services loss of $689.50 had not been submitted to the insurers previously and was dated October 22, 1980.

The insurers contend that work loss benefits are only available to victims of automobile accidents who were either employed at the time of the accident or are able to demonstrate that they would have been employed during the period of their disability and, therefore, sustained an actual loss.

It is clear that the General Assembly declared that the No-fault Act was to provide motor vehicle accident victims with "maximum feasible restoration" and "recovery of a reasonable amount of work loss [and] replacement services" by establishing a system "of prompt and adequate basic loss benefits." 40 P.S. § 1009.102(a)(3) and (6)(A), and § 1009.102(b). The appellate courts have to date broadly construed the act to provide full benefits to those who are injured or to survivors of deceased victims: Allstate Insurance Co. v. Heffner, 491 Pa. 447, 421 A. 2d 629 (1980); Erie Insurance Exchange v. Roule, _____ Pa. Superior Ct. _____, 420 A. 2d 733 (1980).

Work loss is one of several basic loss benefits available to a victim: 40 P.S. § 1009.202. The definitions of "loss", "loss of income" and "work loss" are

set forth in section 103 of the act: 40 P.S. § 1009.103. Section 205 of the act deals with the calculation of "work loss" and establishes three categories of employment status including victims who are not employed at the time of their injury: 40 P.S. § 1009.205(c). As in other cases arising under this act, this situation presents an interpretive dilemma.

Mrs. Callahan was not employed on the accident date. The evidence does disclose that sixteen days before October 28, 1978 she indicated that she would be available for pre-employment training after December 1978 with the U.S. Postal Service. She testified that in October her grandmother was critically ill, and she had been asked by her mother to return to West Virginia. Her youngest and fifth child's age was also a factor in not making herself available in October 1978 for the appointment with the U.S. Postal Service. She is a high school graduate and attended college in West Virginia for one year at which time she married and left college. Her last job was in a department store as a marking room clerk and office girl. She was employed for approximately two years until 1970 and was paid at an hourly rate of $2.65.

Section 205 of the act, as applied to an unemployed victim, provides that "work loss . . . shall be calculated by: (1) determining his probable weekly income by dividing his probable annual income by fifty-two; and (2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period."

Sub-section (d) of section 205 of the act defines "probable annual income" for a victim regularly employed at the time of the accident, for a victim

seasonably employed or not employed at the time of the accident or for a victim who has not previously earned income from work: 40 P.S. § 1009.205(d). One could argue subsection (d)(B) precludes a victim from work loss benefits if the victim had not been employed during any of the three years immediately preceding the accident date. The court, considering the purpose of the act, determines that this interpretation is not fair, particularly in view of work loss being made available to victims who had not previously earned any income from work: 40 P.S. § 1009.205(d)(C); Marryshaw v. Nationwide Mutual Insurance Co., 13 D. & C. 3d 172 (1979).

The court concludes that the reasonable expectation of income realization but for the injuries received in the accident is the proper threshold to apply in this situation. The court finds that the evidence at the hearing established that Mrs. Callahan at the time of the accident causing her injuries had a reasonable expectation of employment after December 1978 and intended to work. She is entitled to work loss benefits under the act from February 1979 as she "would reasonably have been expected to realize income during the accrual period." § 1009.205(c)(2). The court cannot find from the evidence that she would have been employed by General Motors Corporation, the U.S. Postal Service or any employer as of a specific date in January 1979 since she had indicated that her availability for pre-employment training with the U.S. Postal Service was not until January 1979. A month's delay has been deemed reasonable for beginning the accrual period.

This court agrees with the statement of Judge Gardner in Dorsey v. Harleysville Mutual Insurance Company, Montgomery County 76-4290, decided April 8, 1979:

"Notwithstanding the seeming changes, or at least codifications, wrought by the No-Fault Act in the computation of the amount of work loss, the 'reasonable expectation' threshold is, in our opinion, no departure from the law of the Commonwealth as to the sufficiency of proof required to establish what used to be called loss of earning power or capacity."

Where the "reasonable expectation" threshold is met, the probable annual income for the computation of the amount of work loss should be as set forth for a victim who has not previously earned income from work under subsection (d)(C) since Mrs. Callahan was not employed during the three years immediately preceding 1978. The court finds that petitioners did not meet the burden of proving by competent evidence the extent and amount of work loss benefits to which she is entitled. Mr. Callahan's testimony on starting wages at the U.S. Postal Service is not found credible. Petitioners may not rely on the relevant provisions of the regulations issued by the Insurance Department of the Commonwealth of Pennsylvania in order to establish "the average annual gross income of a production or non-supervisory worker in the private nonfarm economy" since she is domiciled in the state of Ohio. Her statement that she did not feel that she was capable of working as of November 1980 without corrobation by her physician is not sufficient.

Mrs. Callahan testified that she did not recall submitting to either State Auto or Home any information as to the rate at which she would have been paid by either prospective employer. Petitioners did not produce evidence of the average annual gross income of a production or non-supervisory worker in the private nonfarm economy in Ohio for 1978 or

any subsequent year. It is most probable, based on the Pennsylvania Insurance Department's figures for 1978 and 1979,* that her weekly income would exceed both the monthly payment level and the total work loss coverage of $15,000 for the period of her disability: 40 P.S. §1009.202(b)(1)(A) and (2).

Petitioners' evidence established a replacement services loss: 40 P.S. §§1009.103 and 1009.202(c). Their youngest child was placed in a day care center while Mrs. Callahan was hospitalized and incapacitated. The fact that part of this expense may have been incurred had Mrs. Callahan been employed but for the injuries sustained in the accident does not preclude payment of the sum of $689.50.

Petitioners are claiming payment of reasonable attorneys' fees because the overdue medical bills were paid by the insurers after receipt of notification of representation: 40 P.S. §1009.107(1). The evidence shows notice in January 1979 to Sate Auto of a claim for medical expenses with notice to Home about five months later. Both State Auto and Home made payment of overdue medical expenses after the declaratory judgment action was filed on July 27, 1979. After review of counsel's time records for his own and his associate's time until October 1, 1979, the court determines that $775 is a reasonable fee. With regard to the claim for work loss and replacement services loss, counsel fees will not be awarded because payment of those benefits is not overdue. The court also finds that the insurers had a reasonable basis upon which to deny payment

---

*For the calendar year 1978 the amount was $225 per week: 9 Pa. Bull. 2675. For the calendar year 1979 the amount was $278 per week: 10 Pa. Bull. 4081.

under the circumstances. Although the court has rejected State Auto and Home's interpretation of the statute as to work loss benefits for an unemployed person, the issue was novel and not without merit: Hayes v. Erie Ins. Exchange, I, 261 Pa. Superior Ct. 171, 395 A. 2d 1370 (1978).

Interest will not be awarded at 18 percent per annum as provided in section 106(a)(2): 40 P.S. § 1009.106(a)(2). Petitioners never submitted until the hearing reasonable proof of the amount of replacement services loss. Under this opinion petitioners still must provide satisfactory proof of the work loss entitlement to the insurers. See Hayes v. Erie Insurance Exchange, II, _____ Pa. Superior Ct. _____, 419 A. 2d 531 (1980).

## DECREE

And now, January 5, 1981, in this declaratory judgment proceeding the court determines that:

1. Petitioner Barbara Jo Callahan is entitled to work loss benefits upon proper and satisfactory proof of the average annual gross income of a production or non-supervisory worker in the private nonfarm economy in the State of Ohio and the length of time for which this benefit should be paid.

2. Petitioners are entitled to payment of $689.50 for replacement services loss.

3. The law firm of Geisenberger, Zimmerman, Pfannebecker & Atlee shall be paid $775 as a reasonable attorney's fee by respondents.

4. Interest at the rate of 18 percent per annum will not be awarded provided the payment to Paragraph 2 of this decree is made within 30 days.