447 A.2d 1381

**Lawrence J. DRAGUN and Linda S. Dragun, his wife Appellants,**

v.

**Vincent VOLK and Diana Volk, his wife.**

Superior Court of Pennsylvania.

Argued March 17, 1981.

Filed April 23, 1982.

Reargument Denied Aug. 6, 1982.

Petition for Allowance of Appeal Granted Sept. 13, 1982.

444

Behrend, Aronson and Morrow, David M. Moran, Pittsburgh, for appellants.

Charles Kirshner, Pittsburgh, for appellees.

Before PRICE, BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

The instant matter presents an interesting problem of interpretation of the No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489.

Although the case has several minor questions to be resolved, the central issue demands judicial interpretation of the language of § 1009.301(a)(5)(B), which provides that, although tort liability is partially abolished, a tort-feasor remains liable for non-economic detriment where:

the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and neces-

sary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care, and recovery of the victim, *exclusive of diagnostic X-ray costs and rehabilitation costs in excess of one hundred dollars ($100),* is in excess of seven hundred fifty dollars ($750) . . . (Emphasis supplied)

The lower court, in a well-reasoned, thoughtful opinion determined on the facts and law that the plaintiffs' pleadings do not present any genuine issue of a material fact, nor did they seek to oppose the properly supported Motion for Summary Judgment of the defendants. The Motion for Summary Judgment was granted, and this court affirms.

The plaintiffs, husband and wife, were injured in an automobile accident by a vehicle driven by the female defendant and owned by the male defendant. Both plaintiffs alleged "serious and permanent" injuries; wife further alleged medical, dental, hospital and nursing expenses in excess of $750.00, excluding diagnostic X-ray and rehabilitation costs in excess of $100.00. Both plaintiffs claimed damages on each of the four counts "in excess of $10,000."

Defendants filed Answer and New Matter, averring that the complaint failed to state a cause of action under the No-Fault Act, and they thereafter served interrogatories upon the plaintiffs and took depositions.

The lower court found that the husband in deposition readily admitted to his total reliance upon a medical report as the only document on which he based his allegation of "serious and permanent injury." It further found that the medical doctor stated at defendant's final examination on December 20, 1976, "I find no debility in this regard [lower back pain] by current examination." A similar report, by wife's dentist, was accorded equivalent treatment by the trial court. Noting that the doctor's prognosis was "at best unpredictable" and that in the 29 months since the report was written no follow-up dental work had been needed, the court held that the record certainly did not "connote a serious *and* permanent injury."

Further, the trial court noted that the plaintiffs were entitled under Pa.R.C.P. 1035(d) to contradict the properly pleaded allegations in the Answer, but that they had not chosen to amplify the record with further specific facts to show that the injuries sustained presented genuine issues of fact as to their seriousness and permanency. Where the plaintiff does not respond, Rule 1035(d) provides that summary judgment, "if appropriate, shall be entered against him." The lower court found the pleadings did not present a genuine issue for litigation as to seriousness and permanency for presentation and that summary judgment on that issue was appropriate. We agree.

The more intriguing issue is presented by the wife's second claim on her injuries. She avers, in an effort to cross the $750.00 threshold provided in Section 301(a)(5)(B), that she has paid out $595.47 in expenses which, if proven, are undisputed as valid under the Act. In addition, she lists another $558.20 in expenses that defendant alleges came under the wording "exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100)." Defendant, therefore, would allow but $100 from the second group of bills and avers that wife's allowable medical expenses therefore are at the most $695.47, and are manifestly short of the $750.00 threshold.

Wife concedes that the list contains a diagnostic x-ray and a brain scan which are in the excluded category. However, she asserts that the expenses of the physical therapist and of the dynamic cerebral, both prescribed by her medical doctor, should be included.

The dynamic cerebral may be dealt with briefly: the court below found that "this is a diagnostic tool utilizing x-rays" and should be excluded under the wording that specifically excludes "diagnostic x-ray costs." The court's opinion weighs the plaintiffs' viewpoint as well, and its discretion in reaching the result it reached was not misapplied. There is no mystery to be unveiled to a jury for this threshold decision. Either the process is or is not a diagnostic procedure involving x-ray. The court below claims to

have reviewed all matters "exhaustively," and in the light "most favorable to plaintiff." This court has no difficulty in accepting its finding that the $75.00 paid for a "dynamic cerebral" was in the category eliminated in law for inclusion in the $750.00 necessary under 301(a)(5)(B).

■ The expenses of the physical therapist are also at issue. Plaintiffs' Brief in Opposition to Motion for Summary Judgment (R.Doc. # 19, p. 4) correctly quotes the volume edited by D. Shrager, *The Pennsylvania No-Fault Act*, pp. 218–19 (1979), in which the text speculates:

> It would seem that there would be no reason why out-patient physical therapy prescribed by a physician, although administered by a registered physical therapist, should not be considered a medical service for the purpose of computing expenses includable in the $750.00 threshold, again without reference to the $100.00 sub-limit.

The related problem of whether the expenses of chiropractic services could be counted toward the $750.00 threshold was treated by the Supreme Court in the recently filed case of *Miller v. Johnson* and *Strunack v. Ecker*, consolidated for appeal and argued at No. 80–3–503, filed Nov. 18, 1981, 496 Pa. 290, 436 A.2d 1187. The court determined that chiropractic expenses were in fact includable in the threshold amount.

That decision, however, is not determinative of the matter at bar, for chiropractors (like doctors and dentists whose services are unquestionably included in the threshold amount) are approached directly by the patient and maintain an office wherein they are ordered by statute to display the certificate of the state permitting their practice. See 63 P.S. § 620. In contrast, physiotherapists are forbidden by statute to practice independently, but are limited to treating patients referred to them by a licensed physician, dentist, or podiatrist, 63 P.S. § 1309.

Upon careful review of the problem, we have concluded, as did the court below, that contrary to the speculation of the *Shraeger* text, and in contrast to the holding of the

Supreme Court on chiropractic services, physiotherapy expenses cannot be included in the $750.00 threshold amount.

The first line of inquiry into the meaning of any statute must be the plain words of the statute. 1 Pa.C.S.A. 1921(a) and (b).

Turning to the Act itself, therefore, examination of the "Findings and Purposes" as set forth therein brings this wording to our attention:

¶ 102(a)(6). Careful studies, intensive hearings and some State experiments have demonstrated that a basic system of motor vehicle accident and insurance law which:

A. Assures *every* victim *payment of all his basic medical and rehabilitation costs,* and recovery of a reasonable amount of work loss, replacement services and survivor's loss; and

B. *Eliminates the need to determine fault* except when a victim is *very seriously injured,*

is such a low-cost, comprehensive, and fair system. (emphasis supplied).

At Section 103, these "medical and vocational rehabilitation services", unquestionably due in repayment of expenses to every victim, are defined as follows:

. . . services necessary to reduce disability and to restore the physical, psychological, social and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology . . . [etc.] . . .

The choice of words in § 102 implies two major categories of treatment: "medical" and "rehabilitational." At § 103 "rehabilitational" is further described as "vocational," and, in the still more precise definition following, the category of "medical care" is again listed, but other possible services are now divided into a number of categories:

(1) diagnostic and evaluative procedures;

(2) physical and occupational therapy; and

(3) "other necessary" therapies.

Returning to review of the language of the tort liability section set forth at the beginning of this opinion, we again note that the tort-feasor is to remain liable for the non-economic detriment when the expenses of treatment, as measured by a certain legislatively-given formula, are over $750.00. On closer inspection it is apparent that the formula breaks naturally into three parts:

(1) "reasonable and necessary medical and dental services including prosthetic devices" (included).

(2) "necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care, and recovery of the victim (included).

(3) "diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars" (excluded).

We are required, if possible, to give effect to *all* the terms of the provisions. 1 Pa.C.S.A. 1921(a). We *must*, therefore, find a difference between expenses of "diagnosis, care and *recovery*" and expenses of "diagnostic x-ray and *rehabilitation*." The former are admitted to the $750 threshold *in toto* and the latter *only* to a limit of $100.00.[1]

The language, taken as a whole, indicates that "recovery" expenses are those tied into hospitalization and professional nursing and are completely includable, while "rehabilitation" expenses connote "diagnostic and evaluative procedures," "physical and occupational therapy" and other "necessary therapies" as described in § 103. *These are recompensed by the terms of § 102, but are not includable* (except for $100.00) under § 301(a)(5)(B).

Plaintiffs' therapy expense is not claimed as medical, dental, or prosthetic. It was not incurred in payment of an independently practicing professional such as a chiropractor

---

1. We note that the *Miller* court, mentioned *supra*, at one point in its opinion stated: "We are unwilling to conclude that the Legislature could have intended chiropractic expenses to be included, on the one hand, under basic loss benefits coverage, but excluded, on the other, for purposes of determining whether a tort action ... can be maintained." Insofar as such a statement may imply that the terms of § 103 and § 301(a)(5)(B) are in all respects identical, we disagree for the reasons set forth at length in this opinion.

or podiatrist, or for recovery under professional nursing care or hospitalization. It falls into the third category, being, specifically, physical therapy, and as such it is excluded under § 301(a)(5)(B).

Since any phrase that requires such extensive analysis has a claim to "ambiguity" this court has confirmed its result by review of the legislative history and the circumstances surrounding the statute's enactment. 1 Pa.C.S.A. 1921(c).

Certain members of the Legislature were unhappy at the $100.00 limitation in the proposed version of the law and argued vigorously to change the proposed wording to permit inclusion of *all* "reasonable and legitimate" rehabilitation expenses. A portion of the arguments are set forth below:

> We have in the Commonwealth people who specialize, perhaps, in the treatment of illness, and particularly after an accident, using rehabilitation methods ... I know of people, and I am sure you do also, who have been involved in accidents where they have had hip injuries perhaps or ankle or knee injuries, and they are in need of these services and this type of treatment. I fail to understand why the insurance industry insists that it be limited to $100.
>
> The effect of this amendment would be to lift that restriction, and if, indeed, people have $750 worth of medical bills, then they meet the requirements of the bill with respect to threshold.
>
> Thank you.

> Mr. President, I have not heard a word yet on this amendment about the truly legitimate victim of an automobile accident—the victim, for example, who is required by his physician to go into the hospital on a weekly basis to take therapy for his neck or his back, and without that therapy he simply cannot continue to function. These, as Mr. Wise has indicated, are the overwhelming majority. Why are we penalizing that victim for the mistakes or the chicanery of a few? If we are truly interested in helping the victims of automobile accidents, then why are we

going to penalize the vast majority of them who receive therapy which is absolutely, critically essential for their well-being and their health? *Legislative Journal*—House, Vol. I, No. 126, pp 2103ff (1974).

Obviously, these members interpreted the wording as *excluding* from the $750.00 limit the ongoing therapeutic treatment of *legitimate* injuries by *qualified* persons *at the order of a medical doctor.*

The proponents of the proposed wording (eventually the wording of the Act as passed) took the same view of the *meaning* of the exclusionary language, despite their diametrically opposed opinion as the *usefulness* of the exclusions.

Mr. Speaker, the amendment just offered by Mr. Ryan would further weaken the threshold. We have already weakened it considerably by ripping out of the bill the preclusion of pleadings.

*Now the bill does not prevent the payment of x-ray costs and rehabilitation.* It merely allows them to figure $100 for those services against the threshold. Honestly, the x-rays and the rehabilitation are two areas where a person can have to take hot baths every day for a week or a month or anything to build up these things. That is the reason it is in there, to give some credence to the threshold, because if you rip that out—Mr. Ryan is surprised at me for thinking people would cheat—this is one area where it is easy for a doctor to take a man to the hospital and x-ray all over his body for a broken finger or anything else.

I hope you do not further weaken the threshold in this bill because it already has been weakened. I ask for a negative role. *Id.*

The emphasized language in the above quotation brings forcibly back to mind the stated purposes of the Act— prompt payment of *all* basic medical and rehabilitation costs along with *elimination* of fault actions unless injury is very serious. Pain and suffering was considered. Rehabilitation as essential and as physician-prescribed was considered.

Yet, the legislative vote rejected these arguments in favor of providing low-cost, comprehensive, fair relief for victims.

In the interesting case of *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975), on remand *Singer v. Sheppard*, 33 Pa.Cmwlth. 276, 381 A.2d 1007 (1978), the Supreme Court found the denial of basic loss benefits coverage to motorcyclists to be valid and not unconstitutional, although motorcyclists are required to purchase no-fault insurance, yet retain only the tort remedy, unlike any other user or passenger of a motor vehicle.

After stressing the legislative intent to provide prompt and reasonably-priced insurance coverage, and after pointing out that *all* accident victims benefit from those general purposes, the court stated as follows:

> The reasonableness of the particular amount chosen as the point of segregation is a matter peculiarly legislative. The establishment of boundaries for varied treatment is a function oft-performed by the Legislature and seldom questioned by the courts. . . . We will not and cannot measure the wisdom of this selection. Id. 346 A.2d at 905 [citation omitted].

"Keeping down expenses" is thus a well-recognized, legitimate legislative purpose.

The legislators did not wander naively into this wording of the Act. As seen *supra*, the division of expenses that could be counted toward the threshold and those that could not was a hard-fought issue. The expenses of plaintiff-wife do not fall into the "recovery" category associated with independent professional medical services, hospitalization and professional nursing, but with the "rehabilitation" category including "physical", "occupational" and "other necessary" therapies. As such, her expenses do, of course, fall into the broad category of the services repaid to "every" victim under § 102(a)(6)(A), but for purposes of § 301(a)(5)(B) these expenses are excluded for the $750.00 threshold once the $100.00 limitation is fulfilled.

The lower court's finding that plaintiff does not reach the threshold sum of $750.00 required to permit her the tort remedy under § 301(a)(5)(B) is correct.

We have examined the lower court's decision for summary judgment, as we must, in the light most favorable to appellant. *Carollo v. Forty-Eight Insulation, Inc.*, 252 Pa.Super. 422, 381 A.2d 990 (1977). We are convinced that no issues of material fact remained to be litigated, and we therefore affirm the dismissal on Defendants' Motion for Summary Judgment.