480 A.2d 1080

**Suzanne S. WILLIAMS**

v.

**Sharon M. DULANEY, Appellant.**

**Suzanne S. WILLIAMS, Appellant**

v.

**Sharon M. DULANEY.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1984.

Filed July 6, 1984.

Petition for Allowance of Appeal Denied Nov. 19, 1984.

Donald B. Hoyt, York, for Dulaney, appellant (at No. 345) and appellee (at No. 348).

William B. Anstine, Jr., York, for Williams, appellant (at No. 348) and appellee (at No. 345).

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

WICKERSHAM, Judge:

Before us are cross-appeals from an order of the Court of Common Pleas of York County (1) denying Ms. Dulaney's motions for a new trial or judgment non obstante veredicto, (2) denying Ms. Williams' motion for additur, and (3) entering judgment on the molded verdict plus delay damages in favor of Ms. Williams in the amount of $78,138.20, plus interest. We affirm in part and reverse in part.

On September 8, 1979, the parties were involved in an automobile accident at the intersection of Route 94 and Sunset Drive in York County. Ms. Williams, who suffered personal injuries as a result of the accident, filed her complaint on April 28, 1980. Trial before a jury was held from February 23–25, 1981. The jury, which was given a set of nine (9) interrogatories to answer, found Ms. Dulaney to have been 100% negligent and awarded Ms. Williams $90,000.00 in damages. Following the trial, Ms. Dulaney filed motions for a new trial and for judgment non obstante veredicto. Ms. Williams filed a motion for additur. On December 10, 1981, the court entered orders (1) molding the verdict by deducting $15,000.00 to reflect the maximum amount that could be awarded to Ms. Williams for lost income under the No-Fault Act[1], and (2) adding delay damages of $6,291.72 to the $75,000.00 molded verdict. The parties' post-trial motions were denied on Oct. 4, 1982 and judgment was entered on the molded verdict plus delay damages. These cross-appeals timely followed.

Ms. Dulaney raises the following issues for our consideration:

1. Act of July 19, 1974, P.L. 489, No. 176 §§ 101 *et seq.*, 40 P.S. §§ 1009.101 *et seq.*

I. Whether the Trial Court erred in not deciding the No-Fault thresholds itself, and in favor of the Defendant?

II. Whether the Trial Court erred in allowing testimony on permanent loss of earning capacity under the circumstances of the case?

III. Whether the Trial Court erred in refusing to strike the testimony of Plaintiff's psychiatrist?

IV. Whether a $90,000.00 total verdict for an injury such as this is excessive?

Brief for Appellant at 3. To these issues, Ms. Williams, the verdict winner above, adds one more:

V. Whether the trial court erred in molding the jury's verdict by deducting $15,000.00 from the jury's award?

Brief for Appellee and Cross-Appellant at 1. After a careful review of the record, the briefs of counsel, and the applicable law, we conclude that the trial court, in its opinion of October 4, 1982, thoroughly discussed the third and fourth issues and correctly concluded that the testimony of Ms. Williams' psychiatrist was properly admitted and that the verdict was not excessive.

■ We additionally find that the second issue, whether the trial court erred in allowing Mr. Gordon's testimony on permanent loss of earning capacity, has been waived because Ms. Dulaney never raised this objection during the trial. *See* N.T., pp. 71–97 (Mr. Gordon's testimony) and pp. 200–210 (motions after close of plaintiff's case). Since no objection was raised to the competency of Mr. Gordon at trial, Ms. Dulaney cannot now complain of any harm done. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *See also, Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); *McKnight v. City of Philadelphia*, 299 Pa.Super. 327, 445 A.2d 778 (1982); *Love v. Harrisburg Coca-Cola Bottling Co., Inc.*, 273 Pa.Super. 210, 417 A.2d 242 (1979); *Stacy v. Thrower Trucking, Inc.*, 253 Pa.Super. 150, 384 A.2d 1274 (1978).[2]

**2.** Even if this issue were not waived, we find it to be meritless. We are satisfied that a jury question was properly raised, and was decided adversely to Ms. Dulaney.

Ms. Dulaney urges us to find error by the trial court in allowing the jury to determine whether the no-fault thresholds had been met. We decline to do so.

Under the Pennsylvania No-Fault Motor Vehicle Insurance Act, before non-economic damages can be awarded against a defendant, a plaintiff is required to prove that she has met at least one of the threshold requirements of section 301(a)(5). 40 P.S. § 1009.301(a)(5). Ms. Williams argued that three of these thresholds had been met in her case: serious and permanent injury; reasonable and necessary medical bills in excess of $750.00; and a physical or mental impairment in excess of sixty (60) consecutive days. 40 P.S. § 1009.301(a)(5)(A), (B) and (C). Testimony concerning these various thresholds was taken during trial and the jury was instructed to answer interrogatories that specifically asked whether Ms. Williams had suffered (1) serious and permanent injuries, (2) reasonable and necessary medical bills in excess of $750.00, and/or (3) a physical or mental impairment in excess of 60 consecutive days. (N.T. at 256–257). The jury found that the first two thresholds had been met, but the 60-day threshold had not been met.[3]

In submitting the threshold issue to the jury, the lower court reasoned that the question of whether or not a plaintiff's cause of action meets the threshold standard set by the No-Fault Act is a question of fact, to be determined by the jury as finder of fact. Lower ct. op. at 3. We agree.

The court determines all questions of law while the jury passes on the credibility of witnesses and determines the facts. *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970). However, a jury cannot be permitted to reach its verdict on the basis of speculation or conjecture. *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959). It is the duty of the trial judge to determine, prior to sending the case to

3. Since the jury by its answer to Interrogatory No. 3, found that Ms. Williams had not suffered a disability which existed for at least 60 consecutive days, Ms. Dulaney was not harmed by the court's alleged failure to make that determination itself.

the jury, whether or not the plaintiff has introduced sufficient evidence to establish the elements necessary to maintain an action. *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983). The trial judge herein specifically ruled at trial that Ms. Williams had produced sufficient evidence for the jury to decide that the no-fault thresholds had been met, leaving the final determination of the facts surrounding attainment of the thresholds to the jury. (N.T. at 211).

In holding that the question of whether or not Ms. Williams' cause of action met the threshold standards set by the No-Fault Act was a question of fact to be determined by the jury, the lower court cited two Court of Common Pleas cases.[4] We have discovered a number of other such cases that discuss the threshold requirements, with varying outcomes.[5] We have also considered a number of appellate cases on the subject from other jurisdictions that have similar no-fault acts.[6] There is little Pennsylvania appellate case law on the subject. The lower court cites our decision in *Martin v. Soblotney,* 296 Pa.Super. 145, 442 A.2d 700 (1982), as support for its holding. However, the Pennsylvania Supreme court, in *Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983), reversed our decision, and held that medical expenses are not admissible to prove pain and suffering. On the topic of thresholds, the court stated:

4. The court cited *Beazley v. Pierce,* 19 Pa.D. & C.3d 729 (York Co. 1981); (whether an injury is permanent, irreparable, and severe [under § 301(a)(5)(D) ] is not so clear that the court can remove it as a question of fact for the jury), and *Miller v. Brenneman,* No. 272, Sept. Term (Chester Co., 1977).

5. *See generally,* D. Shrager, *The Pennsylvania No-Fault Motor Vehicle Insurance Act* (1979 at 206–219, and Supp.1983 at 143–155), and the cases cited therein. *See also, Walker v. Mayers,* 27 Pa.D. & C.3d 1 (Dauphin Co., 1983).

6. *Allstate Insurance Co. v. Ruiz,* 305 So.2d 275 (Fla.App.1974); *Vitale v. Danylak,* 74 Mich.App. 615, 254 N.W.2d 593 (1977); *Falcone v. Branker,* 135 N.J.Super. 137, 342 A.2d 875 (1976); *Rugamer v. Thompson,* 130 N.J.Super. 181, 325 A.2d 860 (1974); *Morell v. Vargas,* 83 Misc.2d 30, 371 N.Y.S.2d 828 (1975); *Scarola v. Goldman,* 81 Misc.2d 977, 367 N.Y.S.2d 186 (1975).

Finally, the Superior Court theorized that evidence of medical expenses must be admitted in order for the trial court to determine whether it has subject matter jurisdiction of a suit in which satisfaction of the monetary threshold requirement is placed in dispute. This issue is not presented by the case before us, and, in any event has no bearing on the question of the admissibility of evidence to show pain and suffering. Moreover, in the hypothetical situation posited by the Superior Court, the question is not one of jurisdiction, *i.e.*, the court's power to adjudicate, but of the plaintiff's right to maintain an action for damages. *See, e.g., In re Jones & Laughlin Steel Corp.*, 488 Pa. 524, 412 A.2d 1099 (1980).

*Id.*, 502 Pa. at 426, 466 A.2d at 1026.

Therefore, we find *Martin v. Soblotney* to be of little assistance in this case.[7]

Nor are the cases cited by Ms. Dulaney in her brief on point. Ms. Dulaney relies on *Commonwealth v. McKetta*, 469 Pa. 223, 364 A.2d 1350 (1976) and *United States v. Lanni*, 466 F.2d 1102 (3rd Cir.1972), for the principle that statutory interpretation is a function of the court and not the jury. Lanni concerned not the Pennsylvania No-Fault Insurance Act, but a conviction of a union official under the Taft-Hartley Act. *McKetta* involved a challenge to the trial judge's determination that a specific, agreed upon substance was dangerous within the meaning of a statute. Both of these cases are inapplicable to the instant question.[8]

---

**7.** Nor do we find the line of cases beginning with *Donnelly v. DeBourke*, 280 Pa.Super. 486, 421 A.2d 826 (1980), *overruled by Bond v. Gallen*, 292 Pa.Super. 207, 437 A.2d 7 (1981) (*en banc*), *aff'd Bond v. Gallen*, 503 Pa. 286, 469 A.2d 556 (1983), to be determinative of the instant case. These cases concern the commencement of the two-year statute of limitation on tort actions arising from motor vehicle accidents under 40 P.S. § 1009.301, and do not really discuss whether meeting the thresholds under that section is a jury or judicial question.

**8.** In *McKetta*, the court stated:
[A]ppellee and the trial court are undoubtedly correct in their assertion that an issue of fact must be resolved by the jury and that a court cannot intrude upon this function. *Schaefer v. United*

■ We hold that the judge must make an initial determination of whether the facts presented to the jury can, as a matter of law, meet the threshold requirements of the No-Fault Act. If he finds that they can, he must then submit the factual question to the jury. Since the trial judge did just that in this case, we find no basis to reverse his decision.

However, Ms. Dulaney also argues that even if it is within the province of the jury to decide the ultimate factual threshold questions, the court erred in finding, as a matter of law, that Ms. Williams presented sufficient evidence upon which to submit those issues to the jury. In examining this issue, we need only concern ourselves with two thresholds: serious and permanent injury, section 301(a)(5)(A), and the $750.00 of reasonable and necessary medical bills, section 301(a)(5)(B).[9]

First, Ms. Dulaney argues that Ms. Williams did not plead that her injuries were "serious and permanent." However, in paragraph 6 of the complaint, Ms. Williams stated that the collision resulted in "the infliction of serious and permanent injuries which shall be set forth more particularly hereafter." R.R. at V. Paragraph 9 of the complaint

*States*, 251 U.S. 466, 40 S.Ct. 259, 64 L.Ed. 360 (1920); *General Electric Credit Corporation v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 480, n. 21, 263 A.2d 448, 458, n. 21 (1970). It is equally axiomatic that questions of law are for the court to decide and not the jury. *Schofield Discipline Case*, 362 Pa. 201, 218–219, 66 A.2d 675, 683 (1949). Our difference with the result reached by the court below stems from our belief that the question presented was one of law and therefore solely within the province of the court to resolve.

A distinction must be recognized between a challenge to the identity of a substance and where the identity is known and its classification is at issue. The former has traditionally been recognized as a factual dispute and its resolution has been left to the trier of fact.

*Id.*, 469 Pa. at 227, 364 A.2d at 1352. In *McKetta*, the identity of the substance was known. Applying *McKetta* to the instant case, if the only question was whether a specific, agreed upon set of injuries or damages meets the threshold requirements, then the question becomes one solely of statutory interpretation, and the judge should decide it. But where, as here, the facts are in dispute, then the jury must make the determination of what the facts truly are.

**9.** *See* note 3, *supra.*

stated that "as a result of her injuries she is suffering from a disability referrable to her cervical sprain, which is permanent, irreparable and severe." R.R. at VI. While we note that several of the common pleas courts have required "serious and permanent" to be pleaded with some particularity, we agree with the lower court that it would be a matter of semantics to contend that in her complaint, Ms. Williams had alleged only a "permanent and severe disability" rather than a "permanent and serious injury."

Ms. Dulaney also argues that Ms. Williams did not present testimony showing that her injury was serious and permanent. The primary testimony on the severity of the injury was by Dr. Cohen, an orthopedic surgeon and Ms. Williams' treating physician. He testified that her condition was "chronic" (N.T. at 41), that the normal aging process and normal wear and tear would add onto any problem she had at the time of trial (N.T. at 45), that she had to avoid activities involving an increased stress to her cervical spine (N.T. at 44), that she should change jobs (N.T. at 41, 50), and that her future was indefinite (N.T. at 44). The extent of the severity of the necessary changes in Ms. Williams' lifestyle and job was illustrated by the vocational expert, Mr. Gordon, who testified that her inability to do secretarial work reduced her earning ability capacity to that of the minimum wage, a loss to her of $60,000.00 over her work life expectancy. (N.T. at 87).

The testimony of doctors as expert witnesses need not be stated precisely in statutory language. *In re Jones,* 432 Pa. 44, 246 A.2d 356 (1968). Expert testimony should be reviewed in its entirety to determine if it expresses the reasonable medical certainty required. *Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board,* 48 Pa. Commw. 161, 409 A.2d 486 (1979). Having reviewed the testimony in its entirety, we agree with that lower court that:

Keeping in mind the difficulty in dealing with semantical absolutes, and assuming that the Legislature intended the application of a commonsense test, we are satisfied that Dr. Cohen's testimony that the Plaintiff's injury was

chronic and her future indefinite as a result, was sufficient to permit the Jury to find that her injury was both severe and permanent. We are therefore satisfied that the testimony did in fact support the Jury's finding that the Plaintiff met the threshold standard which required her to show a severe and permanent injury.

Lower ct. op. at 5.

Ms. Dulaney also argues that Ms. Williams did not prove that she had met the $750.00 medical threshold because she failed to prove that her medical bills were necessary. However, from both Dr. Cohen's testimony and Dr. Fawcett's letters admitted into evidence, the jury could infer the reasonableness of the medical bills. *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979). Nonetheless, the trial court later felt it was bound to hold that the $750.00 threshold was not met, because *Dragun v. Volk*, 301 Pa.Super. 443, 447 A.2d 1381 (1982), held that any physical therapy expenses over $100.00 could not be included in the $750.00 threshold amount. Once the physical therapy bills were deducted, the amount of medical bills in the instant case fell $8.75 short of the required $750.00. Lower ct. op. at 6. Since the time of the lower court opinion, however, *Dragun v. Volk, supra,* has been reversed by our supreme court, which held that the costs of physical therapy are not necessarily rehabilitation costs subject to the $100.00 ceiling. *Dragun v. Volk*, 500 Pa. 613, 459 A.2d 333 (1983). The court then remanded that case for a determination of whether the plaintiff's physical therapy expenses were rehabilitation costs or reasonable medical services.

We find it unnecessary to remand the instant case for a similar determination. Only one of the section 301 thresholds must be met in any case and we have already held that the serious and permanent threshold was met. Therefore, the issues of liability and damages were properly submitted to the jury.

Turning to the last issue, Ms. Williams cross-appeals that the lower court erred in molding the verdict by deducting $15,000.00 from the jury's verdict of $90,000.00.

The amount deducted represented the possible wage loss benefits collectible by Ms. Williams from her own no-fault insurance carrier under 40 P.S. § 1009.202(b) of the No-Fault Act.[10] In answer to an interrogatory, the jury awarded Ms. Williams $50,000.00 for "lost income to date plus loss of future earnings" and $40,000.00 for "pain and suffering," for a total verdict of $90,000.00. From this, the trial court deducted the $15,000.00 work loss benefit. It is clear from the evidence presented at trial and the charge given to the jury that all but $1,481.55 of the award for "lost income" was actually compensation for lost earning capacity. It is this amount, and not the full $15,000.00, that Ms. Williams argues should have been deducted from the verdict. We agree.[11]

**10.** 40 P.S. § 1009.202(b) states:

**(b) Work loss limits.**—Work loss, as defined in section 103 shall be provided:

(1) up to a monthly maximum of:

(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; or

(B) the disclosed amount, in the case of a named insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure work loss; and

(2) up to a total amount of fifteen thousand dollars ($15,000).

**11.** We note that molding of the verdict by the trial judge is not a procedure to be used lightly. It is well settled that a trial court has the power to mold a jury's verdict to conform to the clear intent of the jury. *Groh v. Philadelphia Electric Co.,* 441 Pa. 345, 271 A.2d 265 (1970). The Rules of Civil Procedure authorize the court to mold the verdict if necessary to prevent more than one recovery of the same item of damages. Pa.R.C.P. 1020(d)(3). But the power of the court to mold a verdict is not unlimited and a verdict may not be molded where the intention of the jury is not obvious, where the jury has failed to return a verdict, where the question was never submitted to the jury, or to satisfy the supposed equities of the case. *House of Pasta, Inc. v. Mayo,* 303 Pa.Super. 298, 449 A.2d 697 (1982). Here, the question of the $15,000.00 set-off was never presented to the jury. While we do not normally encourage the molding of a verdict under these circumstances, we feel that the trial court was merely attempting to comply with its interpretation of the statutory mandate of 40 P.S. § 1009.202(b). The court explained that it felt it was more

The Act does not specifically define "loss of future earning capacity." "Loss" is defined as "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to ... work loss ...." 40 P.S. § 1009.103. "Work loss," for which the Act provides benefits, is defined as "loss of gross income of a victim...." *Id.* The plain meaning of the Act is clear: work loss is economic detriment resulting from the inability to work; in other words, the loss of a paycheck. *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983). However, the concept of work loss is vastly different from loss of earning capacity. The consideration of loss of earning capacity is not solely the comparative amount of money earned before and after an accident. The test is whether there is a loss of earning power and of the ability to earn money. *Christides v. Little*, 274 Pa.Super. 343, 418 A.2d 438 (1980). An injured plaintiff may recover for loss of future earning capacity whether the loss in capacity actually reduces his earnings or not. *Messer v. Beighley*, 409 Pa. 551, 187 A.2d 168 (1968); *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983).[12]

Therefore, we hold that the No-Fault Act does not provide basic loss benefits for lost earning *capacity*, but only for recovery of wages actually lost. The amount of wages actually lost by Ms. Williams, and compensated by

appropriate for the court to reduce the jury award by that amount, rather than instruct the jury that they should do so, due to the confusion element. Lower ct. op. at 10. Although the court erred in deducting from its verdict $15,000.00, rather than $1,481.55, we cannot fault the trial court for its attempt to conform to the dictates of the legislature.

12. In order to avoid confusion when charging a jury on damages, a trial court should make clear the distinction between actual loss of earnings (wages), both past and future, and loss of future earning capacity. Since the two are entirely different types of damages, in a no-fault case it might be wise to report them as separate amounts. It would then be clear what portion of the damage award could be compensated by the No-Fault Act.

her no-fault carrier, was $1,481.55.[13] This amount clearly should be deducted from the jury award. However, there should be no further deduction from the remaining award for loss of future earning capacity, which will not be compensated under the No-Fault Act.

We affirm the judgment of $90,000.00 in favor of Ms. Williams. We reverse the order of the court deducting $15,000.00 from that verdict, and we modify the judgment to $92,713.98.[14]

---

**13.** It should be noted that Ms. Williams returned to her employment on a full-time basis within ten weeks after the accident. Therefore, it is unlikely that she will suffer any further actual wage loss due to the accident.

**14.** $90,000.00 verdict—$1,481.55 lost wages = $88,518.45; + $4,195.53 delay damages ($24.25 per day from September 8, 1980 to February 25, 1981) = $92,713.98.