## Michael *v.* Roadway Express, Inc., Appellant.

Argued September 19, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Charles F. Quinn*, with him *Sheer & Mazzocone*, for appellant.

*Martin Heller*, with him *Maximillian J. Klinger*, for appellee.

OPINION BY SPAULDING, J., November 16, 1967:

This is an appeal from the Court of Common Pleas of Philadelphia County affirming a decision of the Workmen's Compensation Board upholding a referee's

award of $37.50 per week[1] to claimant James R. Michael, on the basis of a 50% permanent partial disability. Roadway Express, the appellant, concedes the existence of disability but alleges error in the award.

Claimant, while in the employ of appellant, sustained an injury to his right forearm on June 18, 1964. On June 23, he entered an open agreement with his employer's insurance carrier for payment of compensation of $47.50 per week based on an average weekly wage of $138.15. Compensation was paid until October 13 pursuant to the agreement, and a final receipt was executed on December 17. On August 9, 1965 claimant filed a claim petition with the Bureau of Workmen's Compensation alleging disability from the date of the accident. Roadway denied disability, asserting its cessation on October 13, 1964.

At the hearing before the referee it was disclosed that after the accident claimant worked sporadically with Roadway and two other employers from October 13, 1964 to December, 1965 and that claimant collected unemployment compensation benefits during times in this period when he was unemployed. Roadway contends that claimant earned "substantially the same money after the accident that he was making before the accident"; that claimant terminated his employment with Roadway because of a strike and left his succeeding two jobs because of industrial layoffs, which disqualified him for compensation; and further, as a matter of law, that claimant cannot simultaneously collect benefits under both the Workmen's Compensation and Unemployment Compensation Acts.

The board found that claimant's work history following the accident clearly indicated that he worked less than one half of the period from October, 1964 to

---

[1] Maximum at that time.

December, 1965 and that this loss of time was due to his inability to perform the laboring work in which he was engaged prior to his accident. The board found competent evidence to sustain the referee both on the fact of disability and the percentage loss of earning power. As to appellant's allegation of illegality in receiving benefits for disability and unemployment, the board stated, "A claimant may be entitled to unemployment compensation even though he is entitled to workmen's compensation for partial disability."

As stated by Judge WRIGHT in *DeVore v. Atlantic Mfg. Co.*, 208 Pa. Superior Ct. 224, 229, 222 A. 2d 431 (1966), the findings of fact by the compensation authorities, if supported by the evidence, are binding upon the courts and on appeal from an award the evidence must be viewed in the light most favorable to the claimant. However, the appellate court "may review questions of law, including whether the law has been properly applied to the facts." *Barrick v. Pocono Highland Camp,* 208 Pa. Superior Ct. 72, 75, 220 A. 2d 662 (1966).

The Workmen's Compensation Act itself gives no indication that such factors as "voluntary strike activity and/or industrial layoffs" are either relevant or appropriate, and we find no reported cases to support appellant's contention. Under the process by which workmen's compensation awards are made, two basic conditions must be satisfied. First, there must be disability resulting from an injury occurring in the course of employment. *Sinko v. Bethlehem Steel Co.,* 104 Pa. Superior Ct. 357, 159 Atl. 230 (1932); *Henry v. Lit Brothers, Inc.,* 193 Pa. Superior Ct. 543, 165 A. 2d 406 (1960) (allocatur denied). Second, there must be a loss of earning power caused by the disability. Act of September 30, 1961, P. L. 1762, §1, 77 P.S. §512. These findings alone will support the award. How-

ever, since loss of earning power is based only partial-ly on wage level subsequent to the injury creating the disability, it is conceivable that a claimant may at some point thereafter earn as much as, or more than, he received previously. Should this be the case, compensation for that period is suspended. *Ede v. Ruhe Motor Corp.,* 184 Pa. Superior Ct. 603, 607, 136 A. 2d 151 (1957). "There is a distinction between wages and earning power. Where there is disability and loss of earning power, but the employe receives as much in wages for his services as he did before the injury, an award may be made but the payment of compensation must be suspended: Scipani v. Pressed Steel Car Co., 150 Pa. Superior Ct. 410, 28 A. 2d 502." See also *Benedict v. Fox,* 192 Pa. Superior Ct. 197, 159 A. 2d 756 (1960). Nowhere in these determinations is it appropriate to deny disability benefits because loss of income is due to "voluntary strike activity and/or industrial layoffs."

Appellant objects to the method used in computing claimant's loss of earning power, arguing that the evidence does not support a finding sufficient to justify an award of $37.50 per week. Loss of earning power is, of course, a question of fact, *Anthony v. Lee Coal Co.,* 168 Pa. Superior Ct. 397, 77 A. 2d 657 (1951), and as such, findings are not to be disturbed unless they are in capricious disregard of the evidence. *Barrick v. Pocono Highland Camp, supra,* at 75. Appellant contends that because claimant had jobs with pay rates of $129.20 and $100 per week after suffering his disability it must follow that a finding of loss of earning power justifying an award of $37.50 per week[2] is unsupportable. No one factor is determinative in the matter of earning power. "Elements affecting earning

---

[2] The loss found must have been at least $56.25 per week, two thirds of which (the statutory percentage) is $37.50, the maximum permitted.

power *in addition to actual wages received after injuries are*: (1) the character and extent of the physical injury or disability; (2) his productivity or efficiency in the same employment as compared to what it was immediately prior to the injury; and (3) his ability to earn wages in any kind of employment for which he is fitted." *Leaver v. The Midvale Co.*, 162 Pa. Superior Ct. 393, 400, 57 A. 2d 698 (1948). (Emphasis added.) "The statute provides compensation for loss of earning power and loss of wages is only one of many elements to be considered in ascertaining what the compensable loss is in fact. . . . *Where one has short periods of total incapacity, or even when the degree of partial disability varies, a more satisfactory result is obtained by considering a longer period and striking an average. We thus not only take into account the actual cash income that is lost, but we may also give weight to the effect which intermittent service has on the ability to secure and retain employment.*" *Huerbin v. D. L. Clark Co.*, 140 Pa. Superior Ct. 406, 409-410, 14 A. 2d 175 (1940). (Emphasis added.)

Appellant's final contention is that it is against public policy to permit simultaneous recovery under the Workmen's Compensation and the Unemployment Compensation Acts. Although there are no appellate court cases in our state on this issue,[3] we conclude that compensation for partial disability and unemployment compensation are not inconsistent, for implicit in the theory of partial disability is the concept of partial ability, i.e., the ability to do some work, albeit less remunerative than that done prior to the injury creating the disability, and it is for loss of earnings on this

[3] *Cf. Gabello v. F. W. Woolworth Co.*, 62 Lack. Jur. 225 (C.P. Lackawanna Co., 1961), in which a claimant was permitted workmen's compensation for *total* disability ir addition to unemployment compensation.

remaining ability that unemployment compensation may be obtained.

Appellant seeks to establish an analogy with the case of *Magill v. Westinghouse Electric Corp.*, 209 Pa. Superior Ct. 342, 228 A. 2d 22 (1967), in which a widow received an award under the Occupational Disease Act[4] with credit to the employer for payments made to the decedent and for medical bills paid by an insurance company under a group social insurance policy with Westinghouse, providing for "non-compensable injury or illness." However the Occupational Disease Act specifically provides that "Where an employe has received payments for the disability or medical expense resulting from a disability in the course of his employment, paid by the employer or an insurance company on the basis that the disability was not compensable under this act, in the event of an agreement or award for that disability, the employer or insurance company, who made the payments, shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties . . ." In the *Magill* case, the policy in question provided benefits only when the illness or injury was of a nonoccupational nature, and the court there held that the theory of this section was to prevent double recovery where a supposedly nonoccupational disease is found at a subsequent time to be compensable.

The distinction between the *Magill* situation and the case at bar is obvious. *Magill* implements that desire on the part of the legislature to prevent two recoveries for the same occurrence, while in the instant case we have two entirely separate situations, each giving rise to distinct and independent causes for compensation.

The decision of the court below is affirmed.

---

[4] Act of June 21, 1939, P. L. 566, §319, as amended September 30, 1961, P. L. 1768 §4, 77 P.S. §1419 (Supp.).