554 A.2d 930

Julia C. PERSIK, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued June 13, 1988.

Filed Feb. 9, 1989.

Petition for Allowance of Appeal Denied
Aug. 14, 1989.

Lee C. Swartz, Harrisburg, for appellant.

Jonathan M. Crist, Harrisburg, for appellee.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

The sole issue in this appeal is whether a person who is unemployed when a vehicular accident occurs may assert a claim under the income loss benefit provision of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL).[1] The trial court held that an unemployed person cannot recover lost income and entered summary judgment in favor of the defendant insurance company. We reverse. An injured person may recover income loss benefit by showing that "but for" the accident, he or she would have worked and earned income.

On July 20, 1985, Julia C. Persik, while operating an automobile insured by Nationwide Mutual Insurance Company (Nationwide) on Route 641 East in Cumberland County, Pennsylvania, was struck in the rear by a truck. Due to permanent physical injuries resulting from the accident, Persik was rendered physically incapable of engaging in gainful employment. She had separated from her husband six weeks before the accident; and on or about July 1, 1985, she had begun seeking full-time employment to support herself and her minor daughter. Although she had made several inquiries regarding specific clerical positions, including a law firm for which she had acted as a temporary receptionist during the previous summer, appellant had not obtained full-time employment when the accident occurred.

Persik made a demand on Nationwide for income loss benefits allowed by the MVFRL. Nationwide denied the claim. Persik then filed this action. The trial court granted a motion for summary judgment in favor of Nationwide because Persik had not been earning income at the time of the accident and had been unemployed for twelve consecutive months prior thereto. This appeal followed.

A motion for summary judgment may properly be granted only if the moving party has shown that there is no

1. 75 Pa.C.S. § 1712(2).

genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *French v. United Parcel Service,* 377 Pa.Super. 366, 370, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984). Summary judgment should not be entered unless a case is clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.,* 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983); *Dunn v. Teti,* 280 Pa.Super. 399, 402, 421 A.2d 782, 783 (1980).

Under the provisions of the old, now repealed No–Fault Act,[2] certain recoveries ·vere allowed by the courts which had not been anticipated by the legislature. Thus, the old law was interpreted to permit the recovery of work loss benefits accruing after the death of a victim, *Allstate Ins. Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980), and even to permit recovery of post-mortem work loss benefits by the estate of a deceased victim who had been a minor at the time of death, *Freeze v. Donegal Mutual Ins. Co.,* 504 Pa. 218, 470 A.2d 958 (1983). This caused Representative Michael Mathew Dawida to say during the House Debate on MVFRL that:

> The escalation of costs has come in a number of ways: one, from court decisions that could never have been foreseen by those in the legislature 9 years ago who passed the no-fault law, court cases that allowed a 2–year–old to receive work loss benefits. I assure you, the members of the legislature did not intend that, and the costs that have been encumbered on the constituents from those court cases are a serious and particularly appalling part of the cost escalation.

See: House Debate, December 14, 1983, Legislative Journal 2244. In response to these and other problems, the No–Fault Act was repealed and the MVFRL was enacted. See generally: J. Ronca, L. Sloane, J. Mundy, *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law,* 11–16 (1986).

The new statute provides:

**2.** Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq. (repealed).

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, except recreational vehicles not intended for highway use, motorcycles, motor-driven cycles or motorized pedalcycles or like type vehicles, registered and operated in this Commonwealth, shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

. . . . .

(2) **Income loss benefit.**—Includes the following:

(i) Eighty percent of actual loss of gross income.

(ii) Reasonable expenses actually incurred for hiring a substitute to perform self-employment services thereby mitigating loss of gross income or for hiring special help thereby enabling a person to work and mitigate loss of gross income.

Income loss does not include loss of expected income for any period following the death of an individual or expenses incurred for services performed following the death of an individual. Income loss shall not commence until five working days have been lost after the date of the accident.

75 Pa.C.S. § 1712. By this enactment the legislature made several obvious changes. First, it abandoned specific methods of calculating work loss for persons who were regularly employed, seasonally employed, and not employed, see No-fault Act § 205(a), (b), and (c), 40 P.S. § 1009.205(a), (b), and (c), now repealed, and instead adopted a singular, broad, nonspecific definition of income loss. Second, it expressly excluded the recovery of income loss benefits accruing after the death of a victim, and thus legislatively reversed the decision in *Allstate Ins. Co. v. Heffner, supra*. Finally, it provided for a cost-reducing waiting period of five working days before any income loss would be paid.

Although the legislature expressly excluded recovery of post-mortem income loss, it did not expressly provide that currently unemployed persons who could show that they

would have been earning income "but for" a vehicular accident should be denied income loss benefits. The old, No-fault Act had specifically defined "loss of income" as "gross income actually lost by a victim." No-fault Act, § 103, 40 P.S. § 1009.103, now repealed. The Act had also provided that the work loss benefit for a victim who was not employed at the time of the accident should be calculated by "determining his probable weekly income." No-fault Act § 205(c), 40 P.S. § 1009.205(c), now repealed. Under these provisions, work loss benefits were held to be recoverable where a victim who had been unemployed at the time of the accident would have earned income but for the injuries received in the accident. See, e.g.: *Marryshow v. Nationwide Mutual Ins. Co.*, 306 Pa.Super. 233, 452 A.2d 530 (1982); *Erie Ins. Exchange v. Roule*, 279 Pa.Super. 40, 420 A.2d 733 (1980).

The MVFRL has not purported to change this. Recovery of income loss benefits based upon "actual loss of gross income" requires only that the loss of income be "real," that is that it have "a valid objective existence as opposed to that which is merely theoretical or possible." See: Black's Law Dictionary (5th ed. 1979). Under this standard, there can be no recovery for lost income merely because there has been a loss of earning capacity. Rather, the recovery allowed by the statute must be based upon a real, actual loss of income which would have been earned "but for" injuries received in the accident. A recovery for the loss of actual income, however, does not necessarily exclude recovery by one who, on the date of the accident, was unemployed. It excludes lost income benefits only for a claimant who, in any event, would not have earned actual income. Whether a claimant would have earned actual income but for injuries received in a vehicular accident is a matter of proof.

Like its predecessor statute, the MVFRL is to be liberally construed. *Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 62, 535 A.2d 1145, 1151 (1988); 1 Pa.C.S. § 1928(c). The legislature, although aware of appellate court decisions interpreting the prior statute, made no af-

firmative attempt to disallow the recovery of actual income losses by persons who were unemployed on the date of the accident. Inasmuch as the legislature made no attempt to disallow the recovery of actual income loss by a person who was unemployed at the time of the accident causing injury, we perceive no valid reason for the judiciary to legislate a requirement that a victim be employed before he or she can recover for actual loss of gross income.

To impose such a requirement would not only fail to give the MVFRL the liberal construction which it is entitled to receive, but it would also permit results which would be both unfair and absurd. Such an interpretation, for example, would make it impossible for an employee to recover lost income benefits if he or she were temporarily on strike, or if he or she had been temporarily laid off. Under such an interpretation, a recent college graduate who was injured in an automobile accident immediately prior to accepting his first job offer would be unable to recover income loss benefits; whereas, another graduate who was injured in the same accident but who had started working the day before the accident would be able to recover 80% of the income which he would have earned had the injury not occurred. In our judgment, the legislature did not intend such an absurd result.

We hold, therefore, that the right to recover income loss benefits does not depend upon whether the claimant was employed on the date of the accident. It depends, rather, upon whether there has been an "actual loss of gross income." To prove an actual loss of income it is necessary to show that income would have been earned but for the injury caused by the accident. Because this appears to be the approach intended by the legislature, we hold that the trial court erred when it summarily dismissed appellant's claim for work loss benefits merely because she was unemployed on the date of the accident.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting:

Because I disagree with the majority's definition of the scope of income loss benefits under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701–1798, I respectfully dissent.

On July 20, 1985, Julia Persik was injured in an automobile accident in Cumberland County. Her automobile was insured by appellee Nationwide Mutual Insurance Company [Nationwide]. She was unemployed at the time of the accident. Due to her recent separation from her husband, Mrs. Persik was in the process of seeking full-time employment. Since the accident, however, she has been unable to continue in her attempt to secure a job.

Persik's most recent employment prior to the accident was a temporary position as a receptionist. For the twelve months preceding the accident, she had been continuously unemployed. Notwithstanding her previous employment status, Persik filed a claim to recover income loss benefits under her insurance policy pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law, *supra*. Persik's claim was rejected by Nationwide. Thereafter, she filed this action. After responsive pleadings were filed and discovery initiated, Nationwide filed a motion for summary judgment, averring that an individual who has been continuously unemployed for twelve months prior to an accident has not sustained an "actual loss of gross income." The trial court agreed and granted Nationwide's motion.

The issue raised in the instant case is one of first impression in this Commonwealth. This case calls on us to decide whether the Financial Responsibility Law provides for recovery of wage loss benefits by persons who are unemployed. The relevant portion of the law reads:

§ 1712. Availability of Benefits
An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, ... shall make available for purchase first party benefits with respect to injury aris-

ing out of the maintenance or use of a motor vehicle as follows:

* * * * * *

(2) **Income loss benefit.**—Includes the following:

(i) Eighty percent of actual loss of gross income. 75 Pa.C.S. § 1712(2)(i). Persik argues that she is entitled to receive income loss benefits under this section. Nationwide maintains that Mrs. Persik is not entitled to recover as she had not suffered the "actual loss of gross income" required by the statute. Persik, however, asserts that, by analogy to the now-repealed No-fault Act's [1] provisions governing work loss benefits, income loss benefits under the Financial Responsibility Law should be held to be available to her. The Financial Responsibility Law gives us no explicit guidance on this point and, as a result, we must resolve this dispute by analyzing it in light of its definitions section and with reference to the intent of the General Assembly in enacting it.

The Financial Responsibility Law was enacted in response to perceived dissatisfaction with its predecessor, the No-fault Act. The legislative history of the Financial Responsibility Law reveals that the primary factors prompting its adoption and the repeal of the No-fault Act were the rapidly escalating cost of coverage under the No-fault Act and the rising numbers of uninsured motorists. *Wolgemuth v. Harleysville Mutual Insurance Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988). The No-fault Act had been passed in 1975 to reduce insurance costs. J. Ronca, L. Sloane, J. Mundy, An Analysis of the Financial Responsibility Law, *Pennsylvania Motor Vehicle Insurance,* xvii–30 (1986) (hereinafter Ronca, Sloane & Mundy).

From the very start, we must acknowledge the fact that the Financial Responsibility Law repealed rather than amended the No-fault Act. Section 1971 of the Statutory Construction Act provides, in relevant part:

1. 40 P.S. §§ 1009.101 to 1009.701 (repealed, Feb. 12, 1984, P.L. 26, No. 11, § 8(a), effective Oct. 1, 1984).

Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore *to repeal* all former statutes upon the same subject.

1 Pa.C.S. § 1971(a) (emphasis added). It is apparent that the goals of the No–Fault Act and the Financial Responsibility Law are similar. However, as specifically instructed in section 1971 of the Statutory Construction Act, we must now defer exclusively to the Financial Responsibility Law.

It is also important to note that unlike the Financial Responsibility Law, the No-fault Act contained an express statement of its purpose: "[I]t is hereby declared to be the policy of the General Assembly to establish at a reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b) (repealed). *See also Crusco v. Insurance Company of North America,* 292 Pa.Super. 293, 437 A.2d 52 (1981); *Dull v. Employers Mutual Casualty Company,* 278 Pa.Super. 569, 420 A.2d 688 (1980). This section has been relied upon by the courts of this Commonwealth in extending coverage to the insured in questionable cases. *See Heffner v. Allstate Insurance Company,* 265 Pa.Super. 181, 401 A.2d 1160 (1979) (in support of its holding, the court stated that "the tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured"). The Financial Responsibility Law, however, contains no such explicit statement of purpose to guide us in construing its provisions or in interpreting insurance policies governed by it. Our goal in the interpretation of this or any legislation is to "ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). We must, therefore, attempt to understand the reason for the repeal of the No-fault Act and the

subsequent enactment of the Financial Responsibility Law, noting in particular that the motivation behind both was to reduce premiums.

When interpreting new law, we are guided by the Statutory Construction Act. 1 Pa.C.S. §§ 1501–1991. When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

A general conclusion regarding the intent of the legislature in enacting the Financial Responsibility Law may be reached after careful consideration of these factors. My analysis suggests that one objective in the repeal of the No-fault Act and the enactment of the Financial Responsibility Law was reduction of the number of first party recoveries [2] and a consequent reduction in the cost of coverage to the consumer. Specifically, the Financial Responsibility Law sought to remedy two trends which had developed under the No-fault Act: the rapidly escalating cost of coverage and the rising numbers of uninsured motorists. Thus, while the legislature's basic goal of cost reduction remained unchanged, the repeal of the No-fault Act and the enactment of the Financial Responsibility Law recognized that the No-fault Act had failed to achieve its stated pur-

---

**2.** Under 75 Pa.C.S. § 1702 Definitions, "Benefits" or "first party benefits" are defined as "Medical benefits, income loss benefits, accidental death benefits and funeral benefits."

poses and that new strategies would have to be employed if those goals were to be attained.

Although a considerable amount of the Financial Responsibility Law is modeled after language used in the repealed No-fault Act, there are many sections which appear for the first time and do not parallel present Pennsylvania law or the law of any other state. Ronca, Sloane & Mundy, *supra,* at xviii. There are also numerous provisions of the No-fault Act that do not appear in the Financial Responsibility Law. As I have already noted, the Financial Responsibility Law contains no section setting out the purpose behind its enactment. This omission and its meaning are important to my interpretation of the statute.

The problem is one of basic statutory interpretation. In order to determine whether Persik is entitled to recover, the terms set out by the Financial Responsibility Law in its definition of "income loss benefits" must be defined. It is important to note that both the Financial Responsibility Law and the repealed No-fault Act include a section entitled "Definitions." The relevant terms defined by the No-fault Act included:

§ 103.   Definitions.

\*       \*       \*       \*       \*       \*

"**Basic loss benefits**" means benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act....

\*       \*       \*       \*       \*       \*

"**Loss**" means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss. "**Loss of income**" means gross income actually lost by a victim or that would have been lost *but for* any income continuation plan, reduced by:

(A) eighty percent (80%) of any income which such individual earns from substitute work;

(B) income which such individual would have earned in available substitute work he was capable of performing but unreasonably failed to undertake.

\* \* \* \* \* \*

**"Net loss"** means loss less benefits or advantages required to be subtracted from loss in calculating net loss pursuant to this act.

\* \* \* \* \* \*

**"Work loss"** means:

(A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this act; and

(B) reasonable expenses of a victim for hiring a substitute to perform self-employed services, thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income.

40 P.S. § 1009.103 (repealed) (emphasis added). The definitions section of the Financial Responsibility Law, in contrast, fails to define any of these terms. Consequently, these terms must be defined in the context of the Financial Responsibility Law. I will attempt to define "actual," and "includes," analyze the way in which the "but for" test referred to in the No-fault Act has been used and, finally, determine whether its use should continue under the Financial Responsibility Law.

In doing so, I would note the change in the designation chosen by the legislature to describe this type of benefit. Under section 1924 of the Statutory Construction Act,[3] that change may be considered in any analysis of the Financial Responsibility Law's provisions. I would reason that, based upon 1 Pa.C.S. § 1924 and the history of the law's enactment, in choosing to describe the benefits as "income loss

3. **§ 1924. Construction of titles, preambles, provisos, exceptions and headings**
... The headings prefixed to titles, parts, articles, chapters, sections, and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.
1 Pa.C.S. § 1924.

benefits" rather than "work loss benefits," the legislature intended to indicate a shift in emphasis from loss of *ability* to work (whether or not plaintiff was actually working) to *loss of income* that otherwise would have been received.

Nationwide argues that the entire structure of section 205 of the No-fault Act,[4] entitled "Work loss," has been

4. § 1009.205. Work loss

(a) **Regularly employed.**—The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

(b) **Seasonably employed.**—The work loss of a victim whose income is realized in irregular increments shall be calculated by:

(1) [sic] determining his probable weekly income by dividing his probable annual income by the number of weeks he normally works; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim was unable to perform and would have performed work during the accrual period but for the injury.

(c) **Not employed.**—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period.

(d) **Definitions.**—As used in this section:

'Probable annual income' means, absent a showing that it is or would be some other amount, the following:

(A) twelve times the monthly gross income earned by the victim from work in the month preceding the month in which the accident resulting in injury occurs, or the average annual income earned by the victim from work during the years, not to exceed three, preceding the year in which the accident resulting in injury occurs, whichever is greater, for a victim regularly employed at the time of the accident;

(B) the average annual gross income earned by the victim from work during the years in which he was employed, not to exceed three, preceding the year in which the accident resulting in injury occurs, for a victim seasonally employed or not employed at the time of the accident; or

(C) the average annual gross income of a production or non-supervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work.

replaced in the Financial Responsibility Law by the simple phrase "actual loss of gross income" to indicate that the intent of the legislature was to preclude the collection of income loss benefits by claimants who, at the time of the accident, had no current or regular income, who had not been employed for some period of time, and whose prospects for future employment were uncertain.

Persik contends that the term "actual loss of gross income" should be read as that amount of income she would have been able to earn if the accident had not occurred. This interpretation would be consistent with the three separate categories established under the repealed No-fault Act for determining work loss benefits. Under the No-fault Act, work loss benefits were based upon whether the accident victim was regularly employed, seasonably employed, or not employed. *See* 40 P.S. § 1009.205(a), (b) & (c) (repealed); footnote 2, *supra.* Recovery founded upon such categorical distinctions was clearly consistent with the purposes of the No-fault Act, which encouraged an expansion of first party recoveries. The Financial Responsibility Law, however, has eliminated these categories and replaced them with one simple description of income loss recovery. Mrs. Persik argues that if the intent of the Financial Responsibility Law was to abandon this type of categorization, that abandonment would have been expressly stated.[5] She also contends that in the absence of a new definition, we should continue to apply the one used before the repeal of the No-fault Act. I disagree with both contentions. Acceptance of appellant's interpretation of the Financial Responsibility Law would fly directly in the face of the legislature's intent in enacting it, which I understand to be the limitation of recoveries rather than the expansion of those recoveries. *See* Ronca, Sloane & Mundy, *supra,* at 16.

40 P.S. § 1009.205 (repealed).

5. The only explicit exclusions appear in section 1712(2) of the Financial Responsibility Law which states "income loss does not include loss of expected income for any period following the death of an individual or expenses incurred for services performed following the death of an individual." 75 Pa.C.S. § 1712(2).

In the absence of explicit definitions in the Financial Responsibility Law of the terms used to describe income loss benefits, we must turn to the Statutory Construction Act for guidance in determining their meaning. In interpreting the phrase "actual loss of gross income," I would start with the premise that the legislature generally utilizes words in their standard or accepted sense:

### § 1903. Words and phrases

(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

(b) General words shall be construed to take their meanings and be restricted by preceding particular words.

1 Pa.C.S. § 1903; *see also Crusco, supra.* Black's Law Dictionary defines the word "actual" as "having a valid objective existence as opposed to that which is merely theoretical or possible." Black's Law Dictionary 33 (5th ed. 1979). In construing the term "actual" according to its most common usage, I would hold that where no real, demonstrable loss of gross income can be substantiated, such as in situations where one is either on a salary or unemployed, no benefits can be recovered. *See* Ronca, Sloane & Mundy, *supra,* at 27. Such recoveries were allowed under the No-fault Act because they were consistent with the intent of that act; to allow recoveries to the same extent under the Financial Responsibility Law would be inconsistent with the legislative intent in its enactment.

As stated previously, the No-fault Act attempted to reduce premiums by expanding first party recoveries. The Financial Responsibility Law's intent clearly is to place a ceiling on the number of recoveries permitted. In attempting to define such a limitation, the legislature has eliminated the three prior categories which determined benefits and has replaced them with a single, concise statement: "Eighty

percent of actual loss of gross income." 75 Pa.C.S. § 1712(2). The legislature chose to reword this section in order to provide the clarity lacking in the No-fault Act and to avoid work loss recoveries not anticipated by insurers. Ronca, Sloane, & Mundy, *supra*, at 27. Had the legislature intended to allow recovery for "probable loss of gross income," the statute would have been worded to reflect that intention.

Persik argues further that the phrase, "includes the following," as used in section 1712(2) implies that, in addition to the two defined categories, other types of income loss may be recovered. "The term 'including' within a statute is interpreted as a word of enlargement or of illustrative application *as well as a word of limitation.*" Black's Law Dictionary 687 (5th ed. 1979) (emphasis added). In *Dull,* our court construed the terms "occupying" and "alighting from" according to their common usage determining that this would be consistent with the intent of the legislature when passing the No-fault Act. We found that a different interpretation would not have promoted the purpose of that law. *Dull,* 278 Pa.Super. at 573, 420 A.2d at 688. Since the legislative intent behind the Financial Responsibility Law is to reduce the number of first party recoveries, to construe the term "includes" as used in section 1712(2), other than as a word of limitation would not further the objective to be achieved by that law's enactment. Therefore, the word "includes" should be interpreted as if the phrase "and is limited to" followed it.

Finally, appellant asserts that a "but for" test should be used to determine entitlement to benefits as had been the case under the No-fault Act. She contends that if she establishes that she would have earned income "but for" the fact of the accident, work loss is recoverable. Additionally, she maintains that absent a clear intent by the legislature to change the "but for" test established by the No-fault Act, it should continue to be used under the Financial Responsibility Law.

The No-fault Act referred directly to this test:

"**Loss of income**" means gross income actually lost by a victim or that would have been lost *but for* any income continuation plan reduced by [other listed factors].

40 P.S. § 1009.103 (emphasis added). Case law construing the No-fault Act determined that a negative employment history at the time of the accident did not in and of itself negate the recovery of work loss benefits. *Freeze v. Donegal Mutual Insurance Company*, 301 Pa.Super. 344, 447 A.2d 999 (1983); *Marryshow v. Nationwide Mutual Insurance Company*, 306 Pa.Super. 233, 452 A.2d 530 (1982); *Erie Insurance Exchange v. Roule*, 279 Pa.Super. 40, 420 A.2d 733 (1980). Such decisions were consistent with the legislative intent of the No-fault Act, which was to provide "a basic system of motor vehicle accident insurance law which assures every victim ... recovery of a reasonable amount of work loss." 40 P.S. § 1009.102(a)(6)(A). Consequently, the No-fault Act allowed recovery when one could establish that but for the accident the victim would have *or* could have earned income. Additionally, under the No-fault Act, a person who was unemployed at the time of the accident might still recover according to his or her "probable annual income." 40 P.S. § 1009.205(c). In several cases involving minors, the estate of the victim was entitled to recover work loss benefits even though the minor had yet to enter into the labor market. In *Anfuso v. Erie Insurance Group*, 306 Pa.Super. 567, 452 A.2d 870 (1982), the court referred to section 205(d)(C) of the No-fault Act which provided benefits to a victim "who ha[d] not previously earned income from work." In *Mattia v. Employers Mutual Companies*, 294 Pa.Super. 577, 440 A.2d 616 (1982), the victim was entitled to work loss benefits as calculated under section 205(d) even though her recently opened business was operating at a deficit.

Although the No-fault Act was broader in scope than the Financial Responsibility Law and, as a result, allowed for a greater number of recoveries, in many cases the victim was still required to show an *actual* loss of wages. *Erie Insurance Exchange v. Roule*, 279 Pa.Super. 40, 420 A.2d

733 (1980) (victim on strike when accident occurred recovered work loss benefits since he would have earned income from substitute employment during the period of the strike but for the injuries sustained); *Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16 (1985) (victim, not actually employed for the past sixteen years, was allowed to submit evidence supporting the amount she would have earned in the capacity of part-time beautician since victim had maintained her skills as a beautician, practiced on a part-time basis, and had mentioned on occasion returning to the field full-time); *Williams v. Dulaney,* 331 Pa.Super. 373, 480 A.2d 1080 (1984) (*"[w]ork loss* within the meaning of the No-fault Act is economic detriment resulting from inability to work; in other words loss of a paycheck"). It is not illogical to demand such a showing under the Financial Responsibility Law, which is clearly more narrow in scope, and which was drafted to effectuate a policy of limitation of recoveries in response to the rapidly increasing cost of insurance and the rising number of uninsured persons.

Perhaps more importantly, it should be noted that the Financial Responsibility Law contains no language concerning the "but for" test. Further, it does not include in its text the categories of "regularly employed," "seasonably employed," and "not employed," workers which were part of the No-fault Act. To determine from these omissions that the legislature intended to retain the "but for" test is somewhat illogical. Had the legislature intended to do so, it would have specifically included that language. This reasoning is bourne out by the scope of the Financial Responsibility Law. It was intended to be considerably more narrow with regard to recoveries. Without the inclusion of these categories or evidence of the legislature's intention to provide an analogous system of recovery, I would conclude that if the "but for" test is to be utilized, it must be done so in a limited way. First party recoveries should be limited to those victims who can demonstrate that they *would* have earned income but for the accident. That income *could* have been obtained is not enough.

The interpretation of the statute required to reach the result put forth by Persik seems to me to be contrary to what I discern as the intent of the legislature. Therefore, I would conclude that since Persik was unemployed at the time of the accident, proved only a scant work history, and could demonstrate only uncertain job prospects, she should not be entitled to recover income loss benefits under the Financial Responsibility Law as she has not suffered an actual loss of gross income. I, therefore, would affirm the order of the trial court awarding summary judgment to Nationwide.