645 A.2d 865

Anthony J. PANICHELLI

v.

LIBERTY MUTUAL INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued June 14, 1994.

Filed July 29, 1994.

well within its discretion in entering, and refusing to open, the instant judgment of non pros.

J. Eric Barchiesi, Pittsburgh, for appellant.

Michael E. Kennedy, Pittsburgh, for appellee.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the October 25, 1993 order of the Court of Common Pleas of Allegheny County granting appellee's summary judgment motion. We affirm.

On December 2, 1987, appellee, Anthony J. Panichelli, was injured in a motor vehicle accident. At that time Mr. Panichelli was insured under a policy issued by appellant, Liberty Mutual Insurance Group. That policy was written and issued in accordance with the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"). The policy provided income loss benefits under the Combination First Party Benefits provision.

Mr. Panichelli was unable to work as a result of injuries sustained in the accident. Consequently, he filed a claim for loss of income benefits with Liberty Mutual. Liberty Mutual failed to pay any income loss benefits from December 3, 1987 through August 1, 1988. During that period Mr. Panichelli received sick pay benefits from his employer in an amount equal to his gross income. It was therefore Liberty Mutual's position that it was entitled to set-off for the sick time payments, and thus no payments were made by it to Mr. Panichelli, for loss of income, during that period.

After August 1, 1988, Liberty Mutual did begin to make income loss payments to Mr. Panichelli. However, in calculating the monthly benefit amount, Liberty Mutual took a set-off

in an amount equal to the monthly social security benefit Mr. Panichelli was receiving.[1]

Mr. Panichelli eventually filed suit against Liberty Mutual alleging that it acted improperly in taking credits for his sick pay and social security disability benefits in determining the monthly income loss benefit. After the close of pleadings, Mr. Panichelli filed a Motion for Summary Judgment which was granted by the trial court. This timely appeal followed.

■ Liberty Mutual presently raises the following two issues for our consideration:

I. Whether sick time pay received in lieu of gross income should be deducted in calculating the actual loss of gross income pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law?

II. Whether social security benefits received in lieu of gross income should be deducted in calculating the actual loss of gross income pursuant to the Pennsylvania Motor Vehicle Financial responsibility Law?

These two issues, which can be addressed together, present a case of first impression for this court. Our review of the case law, decided pursuant to the MVFRL, fails to disclose any cases addressing this question. Accordingly, we will carefully detail the arguments presented by each party.

Liberty Mutual relies upon the language of section 1712 of the MVFRL to support its position. Specifically, the pertinent language from that section provides:

### § 1712. Availability of Benefits

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, ... shall make available for

---

1. Mr. Panichelli's gross monthly income, prior to the accident, had been $2,733.50. From that amount, Liberty Mutual deducted 20% allowable under § 1712(2) of the MVFRL. The resultant amount, $2,186.80, was further reduced by $857.90, representing Mr. Panichelli's monthly social security disability benefit. This resulted in a net monthly income loss benefit to Mr. Panichelli of $1,328.90.

purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

. . . .

(2) Income loss benefit.—Includes the following:

(i) Eighty percent of actual loss of gross income.

75 Pa.C.S.A. § 1712(2)(i).

Liberty Mutual maintains that because Mr. Panichelli received sick pay in an amount equal to his gross income, he had no "actual loss of gross income" during the first nine months following the accident. Accordingly, Liberty Mutual contends that Mr. Panichelli was not entitled to any income loss benefits during that period.

Additionally, once the sick pay expired, Mr. Panichelli received social security disability payments each month. Liberty Mutual contends that the actual loss of gross income to Mr. Panichelli during that period was the gross income minus the amount of the monthly social security payment. Liberty Mutual calculated its payment accordingly.

Liberty Mutual urges this court to interpret "actual loss of gross income" in a manner that would allow it to take a credit for sick pay and social security disability benefits in calculating the income loss benefit owed to Mr. Panichelli. To that end, Liberty Mutual refers us to language from *Persik v. Nationwide Mutual Insurance Co.*, 382 Pa.Super. 29, 554 A.2d 930 (1989), wherein this court noted that recovery of income loss benefits required "that the loss of income be 'real,' that is that it have 'a valid objective existence as opposed to that which is merely theoretical or possible.'" *Id.* at 33, 554 A.2d at 932. At issue in *Persik* was whether an unemployed victim of a motor vehicle accident could assert a claim for income loss benefits under the MVFRL. Thus, the question arose whether loss of earning opportunity was a real loss of actual gross income which would be recoverable under the MVFRL.

The present case is somewhat different. Mr. Panichelli was employed at the time of his accident and, as a result of his injuries, was unable to continue to work and earn income. Fortunately for Mr. Panichelli, he had sick pay benefits and

social security benefits to compensate him during that period. Thus, the question really becomes whether the insurance company should receive credit for Mr. Panichelli's work-related benefits. We agree with the trial court that it should not.

In his very well-reasoned opinion, the Honorable R. Stanton Wettick Jr. thoroughly analyzed the argument outlined above and recognized the potential validity of Liberty Mutual's position. As Judge Wettick noted:

> While I agree with plaintiff that the undefined phrase 'actual loss of gross income' is ambiguous, I would construe the Financial Responsibility Law in the manner in which the insurance company proposes (subject to footnote 2)[2] for the reasons that support the insurance company's position if there were no other provisions in the Financial Responsibility Law that offered further guidance. However, the Financial Responsibility Law addresses the issue of Third-party payments at 75 Pa.C.S. §§ 1719 and 1720.

Trial court opinion, 10/25/93 at 4–5.

Mr. Panichelli argues that the trial court correctly interpreted the language of section 1719 as providing that the sick pay and social security disability benefits are secondary to the income loss benefit provided for under section 1712(2). We agree. Section 1719 provides:

> § 1719. Coordination of benefits
>
> (a) General rule.—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. *Any program, group contract or other arrangement for payment of benefits such as described in section* 1711 (relating to required benefits)

2. In footnote 2 of its opinion, the trial court, as do we, questioned Liberty Mutual's manner in deducting a credit for the social security disability benefits. Liberty Mutual chose to take its statutory 20% deduction from Mr. Panichelli's gross income and then deduct the social security payment. This resulted in a net monthly income loss benefit to Mr. Panichelli of $1,328.90. If the social security payment is truly gross income, as Liberty Mutual contends, it would seem to make more sense for Liberty Mutual to deduct the social security amount first from gross income, then make its statutory 80% payment of the remaining amount. Such a calculation would have resulted in a net monthly income loss benefit to Mr. Panichelli of $1,500.48.

*1712* (1) and *(2)* (relating to availability of benefits) or 1715 (relating to availability of adequate limits) *shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section* 1711, *1712* or 1715 or workers' compensation.

(b) Definition.—As used in this section the term 'program, group contract or other arrangement' includes, *but is not limited to,* benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations).

75 Pa.C.S.A § 1719 (emphasis added).

Clearly, the language of § 1719(a) provides that programs which provide for the payment of benefits contemplated under section 1712(2) (income loss benefits) "shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of" benefits provided under section 1712. *See* 75 Pa.C.S.A. § 1719(a). Sick pay and social security are two such "programs" which provide payment of benefits when the ability to earn income is impaired. Accordingly, based on the language of § 1719(a), these programs must be construed as containing provisions making their benefits in excess of the income loss benefits payable under § 1712(2).

■ Liberty Mutual, however, contends that this language, particularly the phrase "any program, group contract or other arrangement," is ambiguous and that based on the definition offered in § 1719(b) was not meant to include sick pay and social security benefits.[3] According to Liberty Mutual, the examples used to explain that phrase indicate that it was only meant to encompass plans similar in nature to hospital plan benefits and/or professional health service benefits. Our re-

---

**3.** We remind Liberty Mutual that in interpreting the MVFRL, cases of doubt will be resolved in favor of the insured to afford the greatest possible coverage to injured claimants. *See Danko v. Erie Insurance Exchange,* 428 Pa.Super. 223, 630 A.2d 1219 (1993).

sponse to Liberty Mutual's argument is two-fold. First, the language of § 1719(b), itself, clearly indicates that the phrase in issue "includes, *but is not limited to* " the two examples set forth. Additionally, Liberty Mutual's proffered interpretation of the phrase, as relating only to health plans, makes little sense in light of the fact that subsection (a) of § 1719 also relates specifically to income loss benefits. Thus, the phrase "any program, group contract or other arrangement" must be interpreted in a manner which also takes into consideration programs for the payment of income loss benefits since § 1719(a) specifically references § 1712(2).

Therefore, having closely analyzed the arguments and carefully reviewed the language of the MVFRL, we conclude that the trial court correctly interpreted the sections at issue. Mr. Panichelli has paid premiums for the income loss benefits provided under § 1712(2) and is entitled to collect those benefits. Additionally, Mr. Panichelli has "paid" for the sick pay benefits and social security benefits he has received. The social security benefits come at the expense of a payroll tax deduction and sick pay is a benefit employers factor in when setting wages for employees. Accordingly, any "double dipping" has come at the expense of some form of payment by the claimant for each type of recovery. Thus, Liberty Mutual's lamentations that Mr. Panichelli has been overcompensated are not going to cause us to change the result in this case, especially, in light of the language of the Act itself. Mr. Panichelli is merely recovering the various benefits he has paid for along the way.

Order affirmed. Jurisdiction relinquished.