Greco, J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8A, appeal by defendant Encompass Insurance Co. (“Encompass”) of the denial of its motion for summary judgment and the allowance of the cross-motion filed by plaintiff Douglas J. York (‘York”), its insured. The case arose out of York’s claim for Personal Injury Protection (“PIP”) benefits under his automobile insurance policy with York for a “loss by reason of diminution of earning power,” as provided in G.L.c. 90, §34A.
The following was undisputed. On January 24, 2002, York was involved in an automobile accident in which he sustained a fractured right ankle, a separated shoulder and an inflamed rotator cuff. Because of these injuries, he was unable to work for at least fifteen weeks.[1] York was unemployed at the time of the accident, having been laid off only a week earlier from his job as a housecleaning supervisor. For the twelve month period preceding the accident, York’s average weekly wage was $562.00. However, York’s plans for further employment after being laid off (if he had not been injured) were not clear. While he had no formal offer of employment, he stated in his answers to interrogatories and in his Mass. R. Civ. R, Rule 56, affidavit that after he was laid off but before the accident, he had been discussing employment with a swimming pool company; that he was told by an employee of the company that there was a “good possibility” he would be offered a job; and that he would have accepted the offer, if made, even though such work would not have begun until sometime in the Spring.
In its “Rulings and Order” accompanying its allowance of York’s motion for summary judgment, the trial court concluded that Encompass was “required to honor... [York’s] claim for diminution of his earning capacity” since his disability as a result of the accident “prevented him from qualifying for unemployment [compensation].” However, the record was not particularly clear with respect to York’s eligibility for such compensation. It appears that in March of 2002, Encompass took the position that York was denied benefits because “he was not paid the minimum amount of wages required by law.” On the other hand, York stated in his answers to interrogatories that he was denied benefits because his former employer had the wrong social security number in its file and that this mistake *46 had been corrected.[2]
We conclude on this appeal that York failed to satisfy his burden of establishing that there was no genuine issue of material fact and that he was entitled to judgment in his favor as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Hendry v. Broadway Foods, Inc., 1998 Mass. App. Div. 37, 38. Ironically, it is the materials submitted by York that raise the factual dispute which precludes summary judgment To put this matter in its legal context, since York was not employed at the time of the accident, he was entided under his policy with Encompass to receive PIP payment for “any loss by reason of diminution of earning power.” G.L.c. 90, §34A Any such payments, however, were “limited to amounts actually lost by reason of the accident” Id. In other words, York was entitled to an amount “he can prove he would have received from work he would have had had he not been injured,” Pinnick v. Cleary, 360 Mass. 1, 7 (1971), subject to the further limitation discussed below. Thus, §34A differs from the common law rule which makes no distinction between a plaintiff who is employed and one who is not employed as to his or her ability to recover damages for loss of earning capacity. See Matloff v. Chelsea, 308 Mass. 134, 136 (1941). The limitation imposed by §34A works no injustice because a “potential plaintiff retains in addition his common law action against the tortfeasor for any elements of damage not recovered as personal injury protection benefits.” Pinnick v. Cleary, supra at 8. Thus, the Appeals Court concluded that a woman who left the workforce in 1978 when she became pregnant and who “remained a housewife through the time of the accident” in 1980 could not recover for loss of earning capacity Malave v. Allstate Insurance Company, 24 Mass. App. Ct. 901 (1987).
Obviously, York’s situation differs from that of a woman or man who has left the workforce in order to stay at home and raise a child. The difference, however, is a matter of degree. While it may well be a close factual issue, Encompass should have the opportunity at a trial to show that even if the accident never happened, York had no intention of seeking employment immediately and was content to wait until the Spring to work at the swimming pool company. If that were the case, York suffered no actual loss of earning power up to the point in time (to be shown at trial) that he would have begun work at that company, and until that time he would be entitled only to PEP benefits for medical expenses. Such a result would be consistent with the purpose of G.L.C. 90, §34M to limit recovery “to a fixed amount of the most salient elements of [the insured’s] out-of-pocket expenses. ...” Pinnick v. Cleary, supra at 6. If York was not going to be working in any event, he suffered no out-of-pocket loss in this regard.[3]
*47 To the extent it was relevant, the trial court need not have been concerned that York might be “shut... out of any earnings compensation” under the PIP statute or under the Unemployment Compensation statute, G.L.c. 151A. To be eligible for benefits under the latter, a person must “[b]e capable of, available, and actively seeking work in his usual occupation or any other occupation for which he is reasonably fitted.” G.L.c. 151A, §24 (b). However, “[n]o individual shall be considered ineligible for benefits because of failure to comply with... [§24(b)] if such failure is due to an illness or disability which occurs during a period of unemployment after he has filed a claim and registered for work, and has been determined to be otherwise eligible.” G.L.c. 151A, §24(c). York stated in his answers to interrogatories that he had filed for unemployment benefits following the accident, although it is not clear when he did so.
Accordingly, there was no error in the denial of the summary judgment motion filed by Encompass, but there was error in the allowance of York’s motion. There must be a trial to determine whether and at what point York would have been earning income “had he not been injured.” If, after trial, it is determined that there was an actual loss of earning power for some period of time, the calculation required by G.L.c. 90, §34A could then be made for that period; i.e., seventy-five percent of $562.00 (York’s average weekly salary for the year preceding the accident) times the number of weeks involved, reduced by any amounts York received pursuant to a wage continuation program.[4]
Summary judgment for the plaintiff is vacated, and this case is returned to the Salem Division of the District Court Department for trial.
So ordered.

 Since it was undisputed that York’s leg remained in an air cast until mid-June and that he was not discharged from physical therapy until early July, it is highly likely that he was unable to work for twenty to twenty-four weeks after the accident.

 In an “Affidavit of Counsel” submitted as part of a Reply Brief filed in this Appellate Division, an attorney for Encompass stated that he was informed by York’s lawyer that York’s re-application for unemployment benefits was allowed, that York received benefits retroactive to the date of the accident, and that he was still receiving such benefits. We pay no heed to this affidavit An appellate court is not the forum for the introduction of new tacts. Counsel was free to bring such evidence to the attention of the trial court on a motion to reconsider. More generally, we remind counsel that the function of a reply brief is not to present rehashed arguments advanced in the original brief in an effort to get the last word.

 While we have found no cases from other jurisdictions directly on point, the result reached by a Pennsylvania intermediate appellate court is analogous. In Persik v. Nationwide Mut. Ins. Co., 554 A.2d 930 (Pa Super. 1989), the court had to interpret a provision of the Pennsylvania Motor Vehicle Financial Responsibility Law (enacted to replace that state’s no-fault insurance scheme) which allowed a claimant to recover “[e]ighfy percent of actual loss of gross income.” The court concluded that under that provision “there can be no recovery for lost income merely because there had been a loss of earning capacity” but that recovery “must be based upon a real, actual loss of income which would have been earned but fori injuries received in the accident” Id. at932. While the unemployed claimant was not automatically precluded from recovering, whether such a claimant “would have earned actual income but for injuries received in a vehicular accident is a matter of proof” Id.

 What constitutes a wage continuation program is not before us. While that term has been discussed in the case law, see, e.g., Flaherty v. Travelers Ins. Co., 369 Mass. 482 (1976), it does not appear to have been defined in those cases or in the PIP statute. Cf. Internal Revenue Service, Treasury Regulations, 26 C.F.R. §1.105-4(1) (2) (1) and §1.105-5(a), which discuss and define that term for Federal tax purposes.